S13A0899. BROWN v. PARODY.
(751 SE2d 793)

MELTON, Justice.

Following the grant of habeas relief to Timothy Parody premised on a finding that he received ineffective assistance of trial counsel, Dennis Brown, acting as the warden of Augusta State Medical Prison, appeals. For the reasons that follow, we reverse.

1. "In reviewing the grant or denial of a petition for habeas corpus, this Court accepts the habeas court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the law to the facts." (Citation omitted.) *Henderson v. Hames,* 287 Ga. 534, 536 (2) (697 SE2d 798) (2010). The record shows that, on January 13, 2011, Parody pled guilty but mentally ill to two counts of child molestation involving acts he committed on his younger brother. As part of a plea bargain, the State agreed to dismiss three additional charges of aggravated child molestation which Parody would have otherwise faced at a trial. After a hearing, the trial court accepted Parody's plea, and Parody was sentenced to fifteen years of incarceration in a medical prison where he would receive treatment with an additional fifteen years of probation. On June 29, 2012, Parody, acting pro se, filed an application for writ of habeas corpus, contending that his trial counsel was ineffective because she failed to investigate all mitigating factors in regards to his mental health condition and his competency to stand trial. Following a hearing, the habeas court granted Parody's request for habeas relief. This ruling was incorrect, as Parody proved neither deficient performance nor prejudice.

2. "Similar to other claims of ineffective assistance, a habeas petitioner seeking to overcome a procedural default must show

professionally deficient performance by trial or direct appeal counsel and that the deficiencies had a reasonable probability of changing the outcome of the [proceeding]. See *Strickland* [*v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)]; *Hall v. Lewis*, 286 Ga. 767, 769 (692 SE2d 580) (2010)." *Perkins v. Hall*, 288 Ga. 810, 822 (III) (C) (708 SE2d 335) (2011).

(a) Although the habeas court found to the contrary, the undisputed facts of record show that trial counsel did not render ineffective assistance with regard to consideration of Parody's competency. Prior to the entry of his plea, Parody underwent three mental evaluations. The first was conducted on March 9, 2010 by Jackie Cox Thompson, a doctor retained by Parody.[1] Dr. Thompson opined that Parody

> does not comprehend or understand the consequences of his actions. It would be my recommendation that he have a full evaluation, be placed on appropriate medications to help him function more appropriately, and to look into a more stable living environment for him. I realize that he has serious charges against him, but I would like to see him have some kind of treatment, total evaluation, and then to re-visit whether he is competent to stand trial.

The second evaluation, performed at the request of the trial court, was one to determine Parody's threat level to the community as a sex offender, not his mental capacity generally. This evaluation concluded that Parody presented a high risk of being a repeat sex offender, that Parody would benefit from continued treatment, and that, as a result, he was not a good candidate for incarceration in a general jail population. Finally, at the request of plea counsel, the trial court ordered that Parody be evaluated by Dr. Lynn M. Katzenmeyer, a psychologist at Georgia Regional Hospital. In a report dated December 3, 2010, Dr. Katzenmeyer found that Parody was competent to stand trial based on a "clear, rational appreciation of his criminal charge." Dr. Katzenmeyer reached this conclusion by interviewing Parody and by reviewing, among other things, both of the prior evaluations listed above.

With all of this information, plea counsel discussed the options of entering a plea or going to trial with both Parody and his parents. All agreed that they wanted to avoid a trial if at all possible. To obtain

---

[1] At the time of this evaluation, Parody had a different lawyer than the one who handled his plea.

this result, plea counsel pressed the State for a plea agreement, which was ultimately negotiated and offered. This agreement to enter a plea of guilty but mentally ill allowed Parody to avoid prosecution for the most serious charges against him,[2] to be placed in a medical prison rather than the general prison population, and to receive treatment — all things recommended by the experts evaluating his mental condition.

Despite the beneficial nature of the agreement, Parody's plea counsel expressed her concerns regarding Parody's mental capacity prior to the entry of the plea. As a cautionary matter, the trial court entered into an extended and wide-ranging colloquy with Parody at the plea hearing. During this conversation, Parody discussed his love of reading, his favorite novelist, his understanding of the specific charges against him, and his knowledge of the court system — including an unsolicited criticism that it too often seemed to be premised on an assumption of guilt rather than innocence. Following this colloquy, the trial court made its own assessment that Parody was competent to stand trial and enter his guilty plea. Therefore, at the time that the plea was entered, the trial court, through its own interaction, found Parody to be competent, and an expert at Georgia Regional found him competent as well, taking into consideration the two previous evaluations.

With the benefit of three separate evaluations, discussions with both her client and his parents, and a consideration by the plea court of Parody's competency, plea counsel secured a beneficial plea agreement for Parody. As a result, the facts of record simply do not support the habeas court's legal conclusion that plea counsel failed to conduct an effective investigation of her client's mental competency. Based on all of the evidence before her, plea counsel's actions were clearly reasonable, and there was no ineffective assistance. *Strickland*, supra.

In finding to the contrary, the habeas court ventured away from the failure to investigate claim that was actually asserted and, instead, narrowly focused on two things, rather than the entire state of the evidence. First, during the habeas hearing, the habeas court asked plea counsel whether all three of the mental evaluations showed that Parody was competent to stand trial. Plea counsel responded, "I believe so[, but] I can look back if you would like for me to, though." Singling out this testimony, the habeas court found that

---

[2] The aggravated child molestation charges each carried a maximum sentence of life imprisonment and a mandatory minimum sentence of 25 years. OCGA § 16-6-4 (d) (1).

"it highlights the defects" in plea counsel's representation because the first and third mental evaluations were contradictory and plea counsel was ineffective for relying on the third evaluation. The habeas court's conclusion is factually and legally incorrect. The first report actually determined that, while Parody appeared to be incompetent, he should receive a full evaluation at a later time to *revisit* his competency or lack thereof. In fact, his competency *was* revisited over eight months later by a Georgia Regional psychologist who took into account the first evaluation. Plea counsel acted reasonably by placing great weight on this study, which was performed shortly before the plea hearing and included an expert review of the results of prior evaluations. Second, the habeas court emphasized Parody's behavior at the habeas hearing, finding that it raised "serious doubts as to whether [Parody] truly understood the nature of the proceedings in which he entered a plea of guilty but mentally ill." The habeas court's assessment of Parody's mental state at the time of the habeas hearing, however, is only marginally relevant to the question of Parody's mental state at the time of the plea hearing, almost two years earlier, when another court closely observed Parody's behavior and reached a different conclusion. The habeas court does not address the plea court's firsthand impression of Parody's competence at the plea hearing. In any event, Parody's behavior at the habeas hearing in no way shows that his plea counsel was deficient in her assistance with his entry of a prior guilty plea.

(b) Even if there had been deficient performance by counsel in this case, there has been no showing of prejudice. To show sufficient prejudice to warrant relief, a petitioner must show that "there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different [cit.]." *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). A review of the habeas court's conclusory and unsupported ruling on prejudice shows that it did not even use the appropriate standard. That ruling, in its entirety, is as follows:

> Had Trial Counsel investigated [Parody's] mental condition and utilized evidence of his mental incompetence in either plea negotiations or a jury trial, this court respectfully submits that [Parody's] outcome *could* have been different. As such, [Parody] was prejudiced by Counsel's ineffective assistance of counsel and the second prong of the *Strickland* standard is established.

(Emphasis supplied.) Even overlooking that there was nothing iden-

tified that plea counsel failed to investigate, the test is not whether the result *could* have been different. The test is that there must be a *reasonable probability* that it *would* have been different. Nothing in the record supports a finding of prejudice, and there is absolutely no contention or support that Parody would have received a more beneficial result had anything been done differently.

*Judgment reversed. All the Justices concur, except Benham and Hunstein, JJ., who dissent.*


BENHAM, Justice, dissenting.

At the time of the alleged acts and the plea hearing, Parody was 17 years of age. Prior to the plea hearing, he was evaluated by three different mental health professionals, each of whom issued written reports. Parody is described in these reports as being small in stature, appearing younger than his age and to be "a little boy in grown up's clothes." His mother reported that he still believed in Santa Claus, the Easter Bunny, and the power of "magic dust" that children on his school bus had given him. According to the evaluation reports, Parody's medical history reflects serious congenital defects, all of which required surgery, including cranial surgery when he was an infant. Afterwards, he reportedly was treated with medications for seizures and other disorders. Some of his physical ailments, including the inability to urinate in the usual manner, resulted in his being mocked by other children. Parody reported being the victim of repeated sexual molestation by his older half-brother commencing when he was six years old and continuing until he was nine. At the time he was indicted, he was attending high school where he had been placed in a special program as a result of masturbating in the school bathroom. According to information supplied to the evaluators, he had never received treatment that was specific to his history of sexual abuse and trauma.

In his pro se habeas petition, Parody claimed ineffective assistance of trial counsel in that his plea attorney failed to investigate all mitigating factors in regard to his mental health condition and competency to stand trial.[3] Parody's trial counsel, Amanda Jones, testified at the habeas hearing that she had concerns about his mental capacity and competency to stand trial or enter a guilty plea and that she had reviewed reports from all three post-indictment

---

[3] Parody is also unrepresented in this appeal, but Professor Sarah L. Gerwig-Moore, J. Scott Key, and law students from the Mercer Law School Habeas Project filed a brief as amicus curiae asserting Parody's interest in the matter. Counsels' pro bono service in this regard is appreciated.

mental health evaluations prior to the plea hearing. The final of the three evaluations, conducted on November 18, 2010, by Lynn M. Katzenmeyer, Psy. D., at Georgia Regional Hospital, reached the conclusion that Parody was competent to stand trial, and counsel testified that, based upon her recollection of the reports at the time of the habeas hearing, she did not believe any of the reports concluded he was incompetent. She also testified that, in any event, she believed evaluations by Georgia Regional were accepted as definitive by the Camden County courts and that she accepted the opinion of the Georgia Regional evaluator as the "final say." In fact, the first of the evaluations, conducted by Jackie Cox Thompson, M.D., on March 9, 2010, reached a contradictory conclusion on competency to stand trial. The statements and conclusions in Dr. Thompson's report include:

> [Parody] appears to be parroting adult language and content that he has learned. I do not believe that he has any real understanding of what is being said. . . . [H]e cannot comprehend his situation. He cannot make an appropriate judgment in reference to the proceedings against him even though he can parrot the charges, and as to who is in the courtroom, and as to their making a judgment. He could talk with the attorney . . . but it is my opinion that he is unable to comprehend the entire situation. . . . In other words, superficially he appears to be about to do all of the things that someone competent to stand trial would be, but it is my clinical estimation and opinion that he is unable to care for himself. He does not understand or comprehend what he has done, or the consequences of that regardless of the fact that he is able to tell us that. . . . It would be my recommendation that he have a full evaluation, be placed on appropriate medications to help him function more appropriately, and to look into a more stable living environment for him. I . . . would like for him to have some kind of treatment, total evaluation, and then to re-visit whether he is competent to stand trial.

In her diagnosis, Dr. Thompson further noted "organic brain disorder secondary to defects and surgery at an early age." The second of the three evaluations, conducted by Tod Lynch-Stanley, LCSW, was not conducted for the purpose of determining Parody's competency but to help determine his risk as a sexual offender, risk to the community, and treatment recommendations. Even this report, however, noted that Parody appeared to have mental health issues mainly related to

his physical problems and that he had the social skills of a nine or ten year old. It concluded he was a good candidate for mental health treatment but was not a good candidate for incarceration due to his young age and extremely immature functioning. Dr. Katzenmeyer's evaluation noted the mother's report about Parody's continued belief in fantasies. At the plea hearing, Ms. Jones told the court she wanted to make sure Parody understood the plea agreement and what was going to happen if the plea was accepted. Although the three evaluations were entered into the record, Ms. Jones offered no argument concerning the conflicting opinions on Parody's mental competency to stand trial.

The plea hearing transcript shows the trial court engaged in a colloquy with Parody, asking him questions concerning his understanding of the criminal acts with which he was charged and the proceedings, and also his intent to waive his rights and plead guilty but mentally ill. Most of the questions regarding his understanding of the plea, however, required a yes or no answer and the transcript reflects few questions were posed to test whether Parody actually understood what he was saying about the plea or the proceedings. Many of the questions consisted of conclusory statements, some containing legal terms of art, to which Parody was then asked if he understood. Most of Parody's responses were simply, "Yes, ma'am." When Parody made longer responses, some of them appeared bizarre or to be non-sequiturs. For example, when asked if his attorney reviewed the plea petition with him, Parody answered: "Well, I basically took — entered criminal judgment with one Rich Gamble." He volunteered: "I'm borderline genius." At the conclusion of the hearing when the judge asked Parody if he had anything else he needed to say, Parody replied: "But I do not [like] cold dinners." At the habeas hearing, Ms. Jones testified that she counseled Parody and his family regarding the option of pleading guilty but mentally ill because he repeatedly told her he did not want to go to a jury trial. She did not testify regarding any other advice that was given regarding options to avoid trial. Further, she attempted to enter the plea because the evaluators had indicated prison was not the right place for Parody and yet he could not be released out into the community. She stated that even before the plea hearing, the trial judge expressed concern over Parody's mental competence and that the judge wanted to communicate with him to assist her in reaching a decision on competence. Ms. Jones acknowledged, however, that no separate proceeding on competence was conducted and referred to the plea hearing as a "little mini competency hearing" prior to the judge's acceptance of the plea.

In the order granting habeas relief, the court found counsel failed to highlight to the trial court the conflicting expert conclusions. The court further found counsel chose to accept the evaluation that found Parody competent as the final say and failed to rely upon the evaluation that was helpful to her client's desire to avoid trial. The habeas court made findings regarding Parody's demeanor, inappropriate responses to questioning during the habeas proceeding, and other indicators of immaturity which, according to the court, it observed but were not reflected in the transcript of the proceeding, all of which led the court to conclude Parody did not have an understanding of the habeas proceedings. Based on these findings, the habeas court concluded trial counsel's performance was constitutionally deficient by not investigating the mitigating factors of Parody's mental capacity and competency to enter a guilty plea. The court concluded the deficient performance of counsel created prejudice, sufficient to meet the standard in *Strickland v. Washington*, 466 U. S. 688 (104 SCt 2052, 80 LE2d 674) (1984), in that Parody "likely would have been given a less severe sentence" had trial counsel utilized mitigating evidence of his mental incompetence either in plea negotiations or a jury trial. The court further concluded that but for trial counsel's deficient performance the "outcome could have been different."

1. "A habeas court's determination on a claim of ineffective assistance of counsel is to be affirmed unless the reviewing court concludes the habeas court's factual findings are clearly erroneous or are legally insufficient to show ineffective assistance of counsel." *Head v. Thomason*, 276 Ga. 434, 436 (1) (578 SE2d 426) (2003). The record in this case reflects evidence that supports the habeas court's findings of fact and, therefore, they are not clearly erroneous. But the next step is to "apply the facts to the law de novo in determining whether trial counsel performed deficiently and whether any deficiency was prejudicial." *Humphrey v. Morrow*, 289 Ga. 864, 866 (II) (717 SE2d 168) (2011). The governing standard for evaluating claims of ineffective assistance of counsel set forth in *Strickland*, supra, applies to guilty plea proceedings. *Hill v. Lockhart*, 474 U. S. 52, 58 (106 SCt 366, 88 LE2d 203) (1985). Addressing first the issue of whether, under the first prong of the *Strickland* standard, the evidence supports the conclusion that counsel's representation fell below an objective standard of reasonableness, in my opinion it does. I note that this is not a case in which counsel substantially failed to make any investigation into the mitigating factors of the defendant's mental competency. Compare *Head v. Taylor*, 273 Ga. 69 (538 SE2d 416) (2000) (where defendant's counsel failed to obtain records of defendant's behavior in jail that would have refuted the state's claim

that his behavior was normal). Here, the record reflects that three relevant mental health evaluations were conducted and the reports made available to the trial court. Nevertheless, having gathered conflicting evidence on the issue of Parody's competency to stand trial, counsel unreasonably accepted the opinion of one expert as the final authority on the matter and failed to advocate on behalf of the defendant that an issue regarding his mental competency was created by the conflicting expert opinion evidence. The majority concludes it was not unreasonable for Parody's counsel to rely upon the opinion that was conducted closest in time to the plea hearing, particularly given Dr. Thompson's recommendation that the issue of mental competency be revisited after Parody was offered some kind of treatment. But Dr. Katzenmeyer's report reflects observations regarding what seem to be objectively observable aspects of Parody's behavior and physical appearance and yet they conflict with the observations of the other two evaluators.[4] These contradictions raise a flag that would have led a reasonable attorney to further investigate all mitigating factors relating to Parody's mental competency, to question the validity of Dr. Katzenmeyer's conclusions, and not to rely on that report as the final authority on the issue of Parody's mental competency. At the very least, a reasonable attorney would have argued this conflicting evidence to the judge for her consideration on the issue of Parody's mental competency to enter a plea. Given the concerns of counsel and the trial court regarding Parody's mental competency to stand trial or enter a plea, the habeas court's conclusion regarding the deficiency of counsel's representation was not clearly erroneous.

Additionally, counsel testified that the motivating factor for her recommendation to pursue plea negotiations, or to enter an open plea, was the desire of Parody and his family to avoid going to trial. Nevertheless, she had serious concerns over Parody's competency to understand the consequences of entering a guilty plea. Given the conflicting opinions regarding Parody's mental competency, a reasonable attorney would have pursued, or at least considered pursuing, defendant's right to enter a plea of incompetency to stand trial (or to enter a plea) and to seek a trial, not on the merits, but on the sole

---

[4] For example, Dr. Katzenmeyer reported that Parody's "arm movements were somewhat uncoordinated, but no other unusual gestures or mannerisms were noted. No distinguishing marks, scars, or tattoos were observed." On the other hand, Mr. Lynch-Stanley specifically mentioned in his report observing unusual gestures and "bizarre mannerisms," along with sounds and grunts "that were likely due to physical problems." Dr. Thompson noted a scar "that goes all the way across [Parody's] head" that appeared to be consistent with Parody's report of cranial surgery.

issue of mental competency pursuant to that version of OCGA § 17-7-130 (a)[5] in effect at the time of the plea hearing.

> [I]n addition to the common law and statutory rights of a defendant not to be tried while incompetent, the accused also has a constitutional right to not be put on trial while incompetent and procedural due process requires the trial court to afford the accused an adequate hearing on the issue of competency. *Pate v. Robinson*, 383 U. S. 375 (86 SC 836, 15 LE2d 815) (1966).

*Baker v. State*, 250 Ga. 187, 189-190 (1) (297 SE2d 9) (1982).[6] Although she recognized that a substantial issue regarding Parody's competency to stand trial or enter a plea was raised by the evidence, counsel acquiesced in the trial court's holding a bench "mini competency hearing" instead of taking steps to assert and protect her client's due process and statutory rights not to be tried or sentenced upon a plea without an adequate hearing on the issue of his mental competence. She did not seek a formal competency hearing separate from the plea and sentencing hearing. It appears that counsel either misapprehended the purpose and right to a competency hearing or failed, through inattention rather than from reasoned strategy, to investigate and advocate all mitigating factors in regard to Parody's competency to enter a plea. Compare *Martin v. Barrett*, 279 Ga. 593, 595 (619 SE2d 656) (2005) (affirming the habeas court's finding that counsel's failure to investigate the defendant's mental competence was constitutionally deficient because it was the result of inattention and not reasoned strategy). The majority faults the habeas court for not addressing the plea court's firsthand impression of Parody's competence at the plea hearing. But that is the primary issue with counsel's performance. At the plea hearing, the trial court stated it was relying upon its own colloquy with Parody in arriving at the conclusion that the plea was knowingly and voluntarily given, yet counsel failed to argue Dr. Thompson's conclusions regarding defendant's lack of understanding the substance of his statements or the proceedings even though he could parrot the language he heard in court.

---

[5] The 2011 amendment to OCGA § 17-7-130 that effectively rewrote the Code section became effective July 1, 2011. Ga. L. 2011, p. 372, § 2/HB 421.

[6] The Supreme Court has determined that, pursuant to the federal right to due process, the standard for determining whether a defendant is mentally competent to enter a guilty plea is the same as that for determining competence to stand trial. *Godinez v. Moran*, 509 U. S. 389 (II) (113 SCt 2680, 125 LE2d 321) (1993).

Finally, in an affidavit filed with Parody's plea petition, counsel went beyond laying the foundation that she had conferred with defendant and fully informed him of his rights, the legal effect of entering a plea, and the possible penalties that could be imposed in response to his plea. In the affidavit, counsel also attested she is "satisfied that defendant is voluntarily entering this plea and that defendant knows and understands the rights [he] is waiving." In this manner, counsel improperly became a witness on the issue of Parody's competency to enter into the plea based on information gleaned from her representation of the client. See *Almond v. State*, 180 Ga. App. 475 (349 SE2d 482) (1986) (finding it repugnant to the idea of a fair trial to admit the testimony of defendant's counsel, after having been called by the state, regarding counsel's opinion regarding the issue of defendant's mental competency that was gained during his representation of defendant). Consequently, in my opinion, the evidence is not legally insufficient to support the habeas court's conclusion that counsel's performance fell below an objective standard of advocacy required under the circumstances of this case. See *Head v. Thomason*, supra.

2. "The second, or 'prejudice,' requirement [of the *Strickland* test], on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, supra, 474 U. S. at 59. *Hill* involved a claim that the petitioner had not been properly advised of his eligibility for parole under the sentence agreed to in the plea bargain. In that case, the Supreme Court stated that in order to satisfy the prejudice requirement of the *Strickland* standard, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. In this case, however, the issue is not whether the defendant would have made a different decision but for counsel's alleged errors but whether he had the mental competency to make a plea decision in the first place. As such, the proper analysis is whether there is "a reasonable probability of a different outcome . . . ." (Citations and punctuation omitted.) *Martin v. Barrett*, supra, 279 Ga. at 595.

The ultimate issue for

> determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. . . . Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends upon

whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

(Citations and punctuation omitted.) *Hill v. Lockhart*, supra, 474 U. S. at 56. For the reasons set forth above, in my opinion the evidence regarding counsel's performance was not legally insufficient to support the habeas court's conclusion that counsel's performance fell below an objective standard of advocacy called for in this case. The habeas court found Parody was prejudiced by ineffective assistance of counsel in that counsel failed to use Parody's mental state as a mitigating factor for sentencing purposes and further found that he "likely would have been given a less severe sentence had counsel investigated and presented mitigating evidence that petitioner suffered from severe mental issues *and possibly was not competent to enter a guilty but mentally ill plea.*" (Emphasis supplied.) As I see it, the habeas court reached the correct result although it may have applied the wrong reason to get there. This Court will affirm the judgment of the lower court if it is right for any reason. See *Goodell v. Oliver*, 292 Ga. 636, 637 (740 SE2d 170) (2013); *Powell v. Brown*, 281 Ga. 609 (641 SE2d 519) (2007) (applying the right for any reason principle in a case seeking habeas corpus relief). Applying the standard set forth in *Hill v. Lockhart*, the central issue presented by Parody's pro se application for writ of habeas corpus relief is not whether there is a reasonable probability that a less severe sentence would have been imposed in response to Parody's guilty plea but whether the plea would have been entered in the first place or, if entered, would have been accepted without a trial on the issue of his competency to enter the plea. In response to Parody's desire to avoid trial, counsel testified only that she counseled him about entering a guilty plea. Even though she had serious concerns about Parody's mental competency to enter a plea, and had gathered conflicting expert opinions regarding his competency, she failed to secure a trial on the limited issue of competency, a right afforded to Parody by OCGA § 17-7-130. Consequently, the habeas court did not err in concluding that prejudice sufficient to meet the *Strickland* test was shown in this case because, had counsel properly advocated for her client with respect to his mental competency, there was "a reasonable probability that, under the appropriate legal standards, [Parody] might have been found to be incompetent to stand trial." *Martin v. Barrett*, supra, 279 Ga. at 595.

Parody told the habeas court: "Sir, what I'm trying to do is not get on the sex offender contract. So that way I can do what the Lord called me to do . . . ." From this statement and other record evidence it

appears Parody likely did not understand the consequences of pleading guilty, a conclusion supported by the conflicting expert opinions regarding his understanding of the charges and proceedings against him. The outcome that would likely have been different in this case is the conviction upon the acceptance of a guilty plea. The majority's conclusion that no better outcome could have been obtained ignores the fact that Parody has been convicted based upon a plea that was accepted without a legally sufficient hearing to determine mental competency to make the plea.

The habeas court concluded that the prejudice prong of the *Strickland* standard is met in this case because the outcome "could have been different." The majority concludes this finding fails to meet the *Strickland* standard because, pursuant to *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding *would* have been different." (Emphasis supplied.) *Strickland*, supra, 466 U. S. at 694. This Court has affirmed the grant of habeas relief on the ground of ineffective assistance of counsel where the facts showed the defendant "might have been found incompetent to stand trial" but for counsel's failure to present evidence relating to the defendant's mental state. *Martin v. Barrett*, supra, 279 Ga. at 595. Further, the "burden is to show only a 'reasonable probability' of a different outcome, not that a different outcome would have been certain or even 'more likely than not.'" *Schofield v. Gulley*, 279 Ga. 413, 416 (I) (A) (614 SE2d 740) (2005). Consequently, I am persuaded that the evidence in this case meets the burden of proof to show Parody was prejudiced by ineffective assistance of counsel in this case and I would affirm the habeas court's ruling.

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED NOVEMBER 25, 2013.

*Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Shepard, Plunkett, Hamilton & Boudreaux, Daniel W. Hamilton,* for appellant.

Timothy Parody, *pro se.*

*Sarah L. Gerwig-Moore, J. Scott Key,* amici curiae.